IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LANA KAY HAHN,

Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

_____ Defendant.

Case No. 3:15-cv-02034-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Plaintiff Lana Hahn brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title XVI Social Security Income ("SSI") and Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

In January and June 2009, plaintiff filed her second applications for DIB and SSI, respectively, alleging disability as of September 4, 2007. Tr. 114-25, 133-34. Her applications were denied initially and upon reconsideration. Tr. 66-73. On September 24, 2010, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 39-60. On January 11, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 22-37. After the Appeals Council denied her request for review, plaintiff filed a complaint in the U.S. District Court for the District of Oregon. Tr. 1-6. In addition, plaintiff filed new DIB and SSI applications, asserting an amended alleged onset date of January 13, 2011. Tr. 562-90.

Thereafter, pursuant to the parties' stipulation, the Honorable Mark D. Clarke issued an order remanding the case for further proceedings. Tr. 593-99. Plaintiff's most recent DIB and SSI claims were denied initially and upon reconsideration, and eventually consolidated with the present action on remand. Tr. 562-90.

On December 17, 2014, a second administrative hearing was held, wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 503-39. On January 15, 2015, the ALJ issued another decision finding plaintiff not disabled under the Act. Tr. 479-502. Plaintiff subsequently commenced this lawsuit.[1]

## STATEMENT OF FACTS

Born on December 7, 1967, plaintiff was 39 years old on the alleged onset date and 47 years old at the time of the second hearing. Tr. 114-25. Plaintiff left high school but later obtained her GED. Tr. 144, 917. She worked previously as a waitress, bartender, cashier, and

---

[1] The record before the Court constitutes more than 1450 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

Page 2 - OPINION AND ORDER

motel housekeeper. Tr. 533. Plaintiff alleges disability due to degenerative disc disease, arthritis, migraines, anxiety, hepatitis C, high cholesterol, and gastroesophageal reflux disease. Tr. 116, 138.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial

gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the

claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe

impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§

404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either

singly or in combination, meet or equal "one of a number of listed impairments that the

[Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert,

482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively

disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past

relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, she is not

disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At

step five, the Commissioner must establish that the claimant can perform other work existing in

significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§

404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20

C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found

plaintiff had not engaged in substantial gainful activity since September 4, 2007, the alleged

onset date. Tr. 485. At step two, the ALJ determined the following impairments were medically

determinable and severe: "chronic pain syndrome due to overuse of opiates, degenerative disc

disease, and history of right shoulder degenerative joint disease." Id. At step three, the ALJ

found plaintiff's impairments, either singly or in combination, did not meet or equal the

requirements of a listed impairment. Tr. 486.

Because she did not establish presumptive disability at step three, the ALJ continued to

evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff

had the residual functional capacity ("RFC") to perform a limited range of light work:

> She can lift and/or carry 20 pounds occasionally and 10 pounds frequently, can
> stand for four hours in an eight-hour workday, can walk for two hours in an eight-
> hour workday, and can sit for six hours in an eight-hour workday. [Plaintiff]
> cannot perform overhead work with her right arm or shoulder. [Plaintiff] cannot
> climb other than ramps and stairs. She cannot perform work at heights or around
> dangerous machinery with moving parts. [Plaintiff] can occasionally crouch,
> kneel, crawl, stoop, and balance. [Plaintiff] can sustain concentration, persistence,
> and pace for unskilled work tasks but may have problems with more complex
> tasks. [Plaintiff] cannot have more than occasional contact with the public.

Tr. 487.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr.

493. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant

number of jobs in the national and local economy that plaintiff could perform despite her

impairments, such as assembler and packager. Tr. 493-94.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting her subjective symptom

statements; (2) rejecting the lay testimony of her partner, James Scarborough, and daughter,

Desiree Dixon; (3) affording less weight to opinion evidence from treating doctor Zahid Afridi,

M.D., and examining doctor Paul Voeller, M.D.; (4) neglecting to include her migraines as a

severe impairment at step two; and (5) failing to include all of her limitations in the RFC.

## I.    Plaintiff's Testimony

Plaintiff asserts the ALJ wrongfully discredited her subjective symptom testimony concerning the severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she was unable to work due to migraine headaches, as well as back, shoulder, neck, and knee pain. Tr. 515-18. As a result of these conditions, plaintiff stated she could stand for two to three minutes at a time; must recline and/or nap, often multiple times per day; and isolate herself in a dark room for four to five days straight, several times per month. Tr. 55, 516-17, 520-22, 527-38. As far as household chores, plaintiff endorsed only the ability to fold laundry while in a stationary position. Tr. 527. She remarked that she otherwise does not do much or go anywhere. Tr. 523-27, 530.

Page 6 - OPINION AND ORDER

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible[2] due to her activities of daily living and non-compliance with prescribed treatments, as well as the lack of corroborating medical evidence. Tr. 487-93.

Notably, the ALJ found that plaintiff's hearing statements were undermined by her daily activities, which "suggest greater functioning than alleged." Tr. 490. Activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted). Substantial evidence supports the ALJ's conclusion in the case at bar. For instance, plaintiff frequently told her care providers that she was independent in her self-care and able to complete her activities of daily living. See, e.g., Tr. 149-52, 804, 918, 974, 982, 986, 1003, 1026, 1030, 1163, 1170. These activities include cooking, limited cleaning, attending medical appointments (some of which required travel), taking public transportation, walking and feeding her dog, exercising, reading, watching television, "camping at least once during summer," socializing with friends and family, and grocery shopping. Tr. 149-52, 164-68, 721-24, 804, 873, 918, 986, 1219.

---

[2] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-3p, available at 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's January 2015 decision was issued more than one year before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

Furthermore, there is a plethora of evidence demonstrating plaintiff provided regular childcare for her numerous grandchildren. For instance, during 2008 and 2009, plaintiff described babysitting three of her grandchildren, three days per week, for pay, including providing "100%" supervision, working with "learning materials," and playing. Tr. 156-63, 185, 442. In July 2010, she reported she "[h]ad three grandkids with her for the past 10 days and had to cook a lot and care for them constantly," such that her pain was "worse during those 10 days" but otherwise "stable." Tr. 873. In September 2011, plaintiff "was caring for [her] sister recently [and also] caring for g[rand]kids" because her daughter was "in the hosp[ital] on bedrest" after giving birth. Tr. 857-58. Between December 2012 and April 2013, plaintiff repeatedly informed her treating doctor that she was "raising [her 18 month old] grandchild."[3] Tr. 962, 979-86. Thus, while plaintiff proffers a more favorable interpretation of this evidence, because the ALJ's interpretation was reasonable, it must be upheld. See Febach v. Colvin, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (ALJ is not required to accept a claimant's attempt to characterize activities as consistent with disability where those activities "could also reasonably suggest" greater functional abilities) (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004)).

The ALJ also found that plaintiff's testimony was contradicted by the medical record, which revealed that her physical impairments were not as significant as alleged. Tr. 488-90.

---

[3] The ALJ expressly provided plaintiff an opportunity at the second hearing to reconcile these inconsistencies in the record. Tr. 523-25. Plaintiff initially denied providing childcare during the adjudication period, stating the last time she was "caring for any granddaughter [was] [y]ears ago"; when the ALJ confronted plaintiff with the fact that "the current records discuss . . . parenting [an] 18-month old granddaughter," plaintiff admitted to more recently travelling to Portland to watch five of her grandchildren, including an 18 month old granddaughter, while her daughter was "very, very ill." Id. On appeal, beyond noting that the records indicating she took "in her grandchild to raise . . . appear to have been a misunderstanding," plaintiff does not address this evidence. Pl.'s Reply Br. 10; Pl.'s Opening Br. 22.

Page 8 - OPINION AND ORDER

Central to this determination was the fact that plaintiff's examination findings were unremarkable and her treatment consisted almost exclusively of various medication regimes, which provided periods of good control. Id. "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (citations and internal quotations omitted). Additionally, "whether the alleged symptoms are consistent with the medical evidence" is a relevant consideration in evaluating the claimant's credibility. Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted).

The ALJ is correct; the few examination findings in the record are largely unremarkable. See, e.g., Tr. 463-65, 830-31, 840, 913, 1217; see also Tr. 862-83 (plaintiff was observed leaving the examination room "without her cane, walking normally; when she realized [she] had forgotten it, she went back and then walked more slowly [with] apparent pain"). Outside of prescription medications, plaintiff declined other modalities of treatment. For example, Harry Rinehart, M.D., repeatedly counseled plaintiff about surgery for her spinal issues; plaintiff responded that "she prefers to wait to proceed with surgery until her pain and mobility are drastically debilitating." Tr. 841; see also Tr. 862-83 (Christian Hill, M.D., commenting that plaintiff had "not apparently been to pain group or done much else for pain except meds").

On numerous occasions, plaintiff reported that these medications allowed her to function adequately. See, e.g., Tr. 824, 979, 982, 986, 993, 999; see also Tr. 834 (plaintiff remarking that her "pain is well controlled"), 861 (plaintiff stating her "current dosage is effective"); 1173 (plaintiff describing her "average pain level [as] 3/10"), 1178 (plaintiff reporting the "pain relief provided by the current regimen is estimated to be 95%"). Moreover, as the ALJ noted, the

Page 9 - OPINION AND ORDER

record supports the inference that plaintiff over-used these medications to her detriment.[4] See Tr.
463 (Dr. Voeller noting plaintiff's "[h]istory of inappropriately prescribed and taken narcotic
analgesics and anxiolytics"), 1222 (Andrew Nye, M.D., opining plaintiff was on an "[e]xcessive
dose of opiates without any organic cause" and that her "chronic pain syndrome is secondary to
her over use of opiates"). Indeed, plaintiff's providers frequently described the dose of opiates
she requested as "ultra high" or "massive." See, e.g., Tr. 1164, 1198, 1201, 1217, 1222, 1230,
1375. They also repeatedly counseled against mixing Methadone, Valium, and Oxycodone
and/or Dilaudid, but plaintiff was not interested in eliminating or otherwise significantly
reducing any of these medications. Tr. 859-60, 1201, 1217, 1222, 1226, 1230, 1405; see also Tr.
1214 (Dr. Nye commenting that plaintiff "has very little insight into her opiate dependency"). As
a result, several providers refused to treat plaintiff and there is some indication that she may have
engaged in doctor-shopping to maximize her access to these drugs. Tr. 852-54, 856, 859, 862-83,
1137, 1168, 1228, 1230, 1236.

　　In sum, the ALJ provided clear and convincing reasons, supported by substantial
evidence, for rejecting plaintiff's subjective symptom statements. As such, this Court need not
discuss all of the reasons provided by the ALJ because at least one legally sufficient reason
exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). The
ALJ's evaluation of plaintiff's testimony is affirmed.

---

[4] Plaintiff argues that the ALJ's consideration of "the amount of medication [she] takes for her
pain [is] improper because [she] takes her medication as prescribed." Pl.'s Opening Br. 22; Pl.'s
Reply Br. 22. Aside from the fact that this is not an entirely accurate characterization of the
record (see, e.g., Tr. 370, 379, 859-60, 989-90, 1137, 1217, 1228, 1405), the fact remains that
"[d]rug seeking behavior is a well recognized reason to discount credibility." Koellman v.
Astrue, 2010 WL 3269903, *7 (W.D. Wash. Aug. 16, 2010) (citing Edlund v. Massanari, 253
F.3d 1152, 1157-58 (9th Cir.2001)).

Page 10 - OPINION AND ORDER

## II.     Third-Party Testimony

Plaintiff contends the ALJ neglected to provide a legally sufficient reason, supported by substantial evidence, to reject the statements of Mr. Scarborough and Ms. Dixon. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

Mr. Scarborough completed Third-Party Adult Function Reports in February 2009 and August 2012. Tr. 148-55, 728-35. In each instance, he indicated that plaintiff was relatively independent in her self-care and engaged in daily activities such as cooking, limited cleaning, babysitting, walking and feeding the dog, and grocery shopping. Tr. 149-52, 154-55, 729-31. Nevertheless, he stated that plaintiff was "in a lot of pain all the time" and unable to "stand or sit or walk for very long." Tr. 153, 728. He also remarked that plaintiff was unable to lift or bend. Id.

In December 2014, Ms. Dixon wrote a letter in support of plaintiff's disability claim. Tr. 788-90. She described how she lived with plaintiff for four months in 2007 and "would not leave [her] children alone with [plaintiff] for more than a few minutes" due to plaintiff's "shoulder and back pain, and also problems with balance." Tr. 788. After 2007, Ms. Dixon reported seeing plaintiff infrequently; however, they spoke on the phone almost daily. Tr. 789. Ms. Dixon denoted that plaintiff's anxiety, memory, and physical problems worsened as time progressed. Tr. 789-90. She further described how plaintiff needed to nap and/or isolate in a dark bedroom multiple times daily to relieve her fatigue and migraines. Id.

Page 11 - OPINION AND ORDER

The ALJ afforded little weight to the lay testimony. Tr. 492. Specifically, the ALJ found

the statements of Mr. Scarborough and Ms. Dixon were contravened by the level of activity

plaintiff was reporting to her medical providers, as well as the objective medical evidence. Tr.

492-93. Inconsistency with the record is a germane reason to discount third-party testimony.

Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Lay witness testimony may also be

disregarded on same basis as claimant's discredited subjective reports. Valentine v. Comm'r Soc.

Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

Mr. Scarborough's Third-Party Adult Function Reports were completed the same day as

plaintiff's Adult Function Reports and are virtually identical. Compare Tr. 148-55, 728-35, with

Tr. 164-72, 720-27. Further, Ms. Dixon's statements concerning the adjudication period echo

plaintiff's claims at the hearing of totally debilitating impairment. Compare Tr. 788-90, with Tr.

515-22. As addressed in section I, the ALJ provided clear and convincing reasons, supported by

substantial evidence, to reject plaintiff's subjective symptom testimony and these reasons are

equally applicable to the lay testimony. See Molina, 674 F.3d at 1114-22 (affirming the ALJ's

decision "where the same evidence that the ALJ referred to in discrediting the claimant's claims

also discredits the lay witness's claims") (citation and internal quotations omitted). The ALJ's

decision is upheld as to the third-party testimony.

## III.    Medical Evidence

Plaintiff argues the ALJ improperly discredited the opinions of Dr. Afridi and Dr.

Voeller. There are three types of acceptable medical opinions in Social Security cases: those

from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th

Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must

present clear and convincing reasons. Bayliss, 427 F.3d at 1216 (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

### A. Dr. Afridi

Dr. Afridi was plaintiff's treating doctor during the early part of the adjudication period. In October 2008, he wrote a letter stating that the combination of plaintiff's medication and arthritis "cause her to be unable to stand on one leg for more than a couple of seconds at a time." Tr. 423. In July 2010, Dr. Afridi completed a reasonable accommodation verification form from the Northwest Housing Authority. Tr. 420-21. He checked a box reflecting that plaintiff was "an individual with a disability," as that phrase was defined within the form, and needed an extra bedroom due to "migraines requiring isolation to be left alone in a quiet environment." Id.

The ALJ afforded no weight to Dr. Afridi's October 2008 statement "because it is without any explanation or support in the record, and is not probative of [plaintiff's] overall functioning." Tr. 492. Dr. Afridi's July 2010 statement was "also not given weight, because it is a conclusory statement regarding disability that is unsupported and inconsistent with the doctor's treatment notes and the record as a whole." Id.

The ALJ may disregard "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957. Similarly, inconsistency with the record is a proper basis to reject a doctor's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Finally, an ALJ need not accept a medical opinion that a claimant is "disabled" or "unable to work" because the ultimate issue of

Page 13 - OPINION AND ORDER

disability is reserved for the Commissioner. 20 C.F.R. §§ 404.1527, 416.927; SSR 96-5p, available at 1996 WL 374183.

After carefully reviewing the record, the Court finds the ALJ did not commit harmful legal error in evaluating Dr. Afridi's opinions. Significantly, Dr. Afridi described plaintiff's migraines as disabling exclusively within the context of the Northwest Housing Authority form, which provided three different qualifying definitions, only one of which inhered to the Act. Tr. 420-21. As a result, it was reasonable for the ALJ to conclude that Dr. Afridi's use of the term "disability" did not necessarily correspond to the definition employed by the Commissioner. This is especially true given that, the same month Dr. Afridi completed this form, he refused to write a letter in support of plaintiff's claim for benefits "stat[ing] that she is 100% disabled." Tr. 872. In any event, because Dr. Afridi's check-the-box statement on plaintiff's Northwest Housing Authority form is conclusory, the ALJ was not required to give it deference. McLeod v. Astrue, 640 F.3d 881, 884-85 (9th Cir. 2011) (as amended).

The single concrete functional limitation articulated by Dr. Afridi in 2008 is wholly irrelevant to the ALJ's finding of non-disability. In fact, plaintiff does not reference this aspect of the record in challenging the ALJ's decision.[5] See generally Pl.'s Opening Br.; Pl.'s Reply Br.;

---

[5] To the extent plaintiff implies the ALJ was required to assign a specific weight to Dr. Afridi's chart notes, her argument is unpersuasive. See Pl.'s Opening Br. 17-18 (asserting that if her subjective symptom statements, as documented in Dr. Afridi's records, are credited, a finding of disability is required because the VE "testified that absences of even 4 to 8 hours per week, due to migraine headaches or any other cause, would preclude competitive employment"); see also Pl.'s Reply Br. 4-5 (discussing Dr. Afridi's treatment notes). Critically, the ALJ did not err in evaluating plaintiff's subjective symptom statements, and neither Dr. Afridi nor any other medical source opined that plaintiff's conditions would cause four to eight hours of absences per week. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999) (ALJ may disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity").

see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (arguments not raised in the claimant's opening brief are "deem[ed] waived"). As such, plaintiff has not cited to, and the Court is not aware of, any evidence demonstrating that the ability to stand on one leg for extended periods is required to be competitively employable. The ALJ's evaluation of Dr. Afridi's opinions is affirmed.

## B.    Dr. Voeller

In October 2010, Dr. Voeller completed a one-time evaluation of plaintiff. Tr. 462-65. His assessment was based on an interview with plaintiff and a physical examination. Id. The examination findings were normal except in relation to plaintiff's use of her right arm above shoulder level. Tr. 463-65. On a corresponding functional capacity form, Dr. Voeller checked boxes reflecting that plaintiff could never reach overhead, occasionally reach in all other directions, and frequently handle, finger, feel, push, and pull with her right arm.[6] Tr. 466-71.

The ALJ gave Dr. Voeller's opinion "some weight because it accounts for limitations related to [plaintiff's] spinal and shoulder impairments." Tr. 491. Nevertheless, the ALJ did "not give weight to his assessment regarding the occasional right handed manipulative activities" because plaintiff "reported pain with reaching overhead, which is consistent with a shoulder impairment, but she did not report manipulative difficulties and none were observed on physical examination, which revealed a full range of motion of the hand as well as normal strength and movement." Id.

Contradiction between a doctor's opinion and his treatment notes constitutes a legally sufficient reason to reject that opinion. Valentine, 574 F.3d at 692-93; see also Downing v.

_____

[6] Dr. Voeller assessed a number of concrete functional limitations, the majority of which the ALJ adopted. Plaintiff does not now challenge the ALJ's decision except in regard to Dr. Voeller's right-sided restrictions. Pl.'s Opening Br. 18-20; Bray, 554 F.3d at 1226 n.7.

Barnhart, 167 Fed.Appx. 652, 653 (9th Cir. 2006) ("an ALJ may reject all or part of an examining physician's report if it contains inconsistencies") (citation omitted).

An independent review of Dr. Voeller's examination notes confirms the absence of any self-reported limitations concerning reaching below shoulder level. See Tr. 462 (plaintiff's sole remark regarding reaching to Dr. Voeller: "[s]he alleges she has a right AC joint rotator cuff injury [and reports that it] hurts her significantly when she reaches above shoulder level"); see also Tr. 613 (plaintiff testifying at her first hearing that she "can't stretch or reach above"). In addition, Dr. Voeller's objective examination findings do not support the need for any restrictions below shoulder level. See Tr. 463, 465 (Dr. Voeller recording clicking and limited range of motion only when plaintiff used her right arm above shoulder level). Finally, state agency consulting source Michael Spackman, M.D., opined that Dr. Voeller's right-sided reaching limitations were "not fully supported by objective findings." Tr. 571-72. Accordingly, Dr. Spackman determined that, based on his December 2012 review of the record, reaching restrictions below shoulder level were not warranted. Id.

In light of this evidence, the Court finds that the ALJ reasonably weighed Dr. Voeller's report in formulating the RFC and therefore upholds the ALJ's decision. See Morgan, 169 F.3d at 602-03 (affirming the ALJ's rejection of medical opinion evidence under analogous circumstances).

## IV.    Step Two Finding

Plaintiff contends the ALJ erred by failing to include migraines as a severe impairment at step two. At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. §§

404.1520(c), 416.920(c). An impairment is severe if it has "more than a minimal effect on the ability to do basic work activities." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citation and internal quotations omitted). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence; "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4p, available at 1996 WL 374187; 20 C.F.R. §§ 404.1513(a), 416.913(a). The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

The record contains multiple references to plaintiff's headaches or migraines. See, e.g., Tr. 249, 334, 379, 382, 386, 802, 811, 824, 834, 869, 1174, 1338. Yet there is only one medical report, dated August 2009, from a headache specialist; this doctor's notes merely reflect plaintiff's subjective symptom statements, and the previous and subsequent imagining studies of plaintiff's brain yielded normal results. Tr. 265-66, 334-37. At step two, the ALJ found that plaintiff's migraines were medically determinable, but not severe, because she experienced "improvement . . . with treatment" and "did not consistently report persistent headaches." Tr. 485-86.

Initially, "[a]ny alleged error at step two was harmless because step two was decided in [plaintiff's] favor with regard to other ailments." Mondragon v. Astrue, 364 Fed. Appx. 346, 348 (9th Cir. 2010); Tr. 485. Regardless, in formulating plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and cited to the pertinent regulations. Tr.

Page 17 - OPINION AND ORDER

487. This analysis entailed evaluation of the relevant and probative medical evidence, as well as

plaintiff's, Mr. Scarborough's, and Ms. Dixon's allegations. Tr. 485-93.

As discussed above, the ALJ properly found the statements of plaintiff and the third-party

witnesses not fully credible, and there is no medical opinion evidence reflecting that plaintiff

suffers from any concrete functional restrictions related to her migraines. The Court therefore

finds that the ALJ's subsequent evaluation, including the RFC assessment, adequately

considered the effects of all of plaintiff's alleged symptoms. In other words, even assuming the

ALJ erred in failing to find plaintiff's migraines severe at step two, such an error was harmless.

Burch, 400 F.3d at 682-83.

## V.    RFC and Step Five Finding

Plaintiff argues that the ALJ's RFC and step five finding are erroneous because they do

not adequately account for the limitations described in her testimony and the lay statements, as

well as the medical opinions of Drs. Afridi and Voeller.

The RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545,

416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a

claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical

and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL

374184. Only limitations supported by substantial evidence must be incorporated into the RFC

and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel,

240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed herein, the ALJ appropriately weighed the evidence from plaintiff, Mr.

Scarborough, Ms. Dixon, Dr. Afridi, and Dr. Voeller. Accordingly, plaintiff's argument, which is

contingent upon a finding of harmful error in regard to the aforementioned issues, is without

merit. Bayliss, 427 F.3d at 1217-18. The ALJ's RFC and step five finding are upheld.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED and this case is

DISMISSED.

IT IS SO ORDERED.

DATED this 10ᵗʰ day of August 2016.

Jolie A. Russo
United States Magistrate Judge

Page 19 - OPINION AND ORDER